[No. 8094-3-III.   Division Three.   December 22, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. MAURICE YOUNG, *Appellant.*

*David Corkrum,* for appellant (appointed counsel for appeal).

*Dennis DeFelice, Prosecuting Attorney,* and *Johnette Sullivan, Deputy,* for respondent.

MUNSON, J.—Maurice Young appeals his convictions for first degree rape and second degree assault contending the court erred in (1) denying his motion to dismiss at the end of the State's case based upon the insufficiency of the evidence and (2) allowing a police officer to testify concerning statements made by the victim shortly after the incident. We affirm.

Mr. Young was arrested and charged with one count of first degree rape and one count of second degree assault.[1] On the day before trial, the victim, Delores Floyd, told the prosecutor she would not testify at the trial. The court held a material witness hearing later that day. Defense counsel was present. Mr. Young was not. The prosecutor asked Ms. Floyd to relate the events of January 24, 1986. A transcript of her testimony is of record. Ms. Floyd told the court about the facts upon which the charges were based and that she would not testify at trial. The court ordered that Ms.

---

[1] Between the time of arrest and the time of trial, Mr. Young was sent to Eastern State Hospital for an evaluation of his mental condition. Based upon the evaluation, the court found he was not sane at the time the alleged rape occurred, but was now competent to stand trial. At oral argument, both counsel advised this court that even though everyone agreed with the court's findings, Mr. Young repeatedly declined to enter a plea of not guilty by reason of insanity. Apparently he made his decision before the district court in open court. A defendant has this choice. *State v. Jones,* 99 Wn.2d 735, 664 P.2d 1216 (1983). That record is not before this court, nor is the issue of that waiver passed on appeal.

Floyd be held as a material witness until trial, at which time she would be required to post a $25,000 bond.

At the trial, the State's first witness, Felita Alvarez, testified that on the evening of January 24, 1986, she heard a knock and found a woman with two small children at her back door. The woman asked if she could come in and use the telephone. Ms. Alvarez let them in and the woman called the police. A short time later, a police officer arrived and took the woman and her children away. Ms. Alvarez testified the woman was crying and out of breath.

George Bumpaous, a deputy with the Franklin County Sheriff's Department, testified that he met with Ms. Floyd at 9:25 p.m. that evening and observed two abrasions on her right wrist.

Ms. Floyd took the stand, answered three preliminary questions, then refused to testify further. After the court questioned her concerning her decision, she again stated she would not testify. The court found her in contempt of court and imposed a jail term of 30 days. Two days later, the court reconvened and again asked Ms. Floyd if she would testify; she refused. The court, being convinced she was adamant in her position not to testify and that further confinement would not be productive, freed her from further attendance in the court. The trial was recessed while the State contemplated what to do.

Later that day, the State moved to allow Pasco police officer Archie Pittman to testify concerning statements made to him by Ms. Floyd. The State made an offer of proof through Officer Pittman who testified that at 9:02 p.m. on January 24, 1986, he received a call to respond to a residence. When he arrived 2 minutes later, he met Ms. Alvarez, Ms. Floyd, and two children. Ms. Floyd was excited, frightened, nervous, and out of breath. She was extremely angry and demanded that he do something. He stated Ms. Floyd told him she was afraid of Mr. Young. She told him she was picking up some mail when Mr. Young put a knife to her throat, took her into the home, tied her up, and forced her to have sexual intercourse. They then

agreed to get some food. Mr. Young, Ms. Floyd, and the two children got into the car and drove to the Chinese Gardens. When Mr. Young went into the restaurant to pick up the food, Ms. Floyd and her two children ran from the car and began to knock on houses until they reached Ms. Alvarez' house.

Officer Pittman admitted he did not make a report or take any notes concerning the incident. He explained he did not investigate the matter further because he realized the incident occurred in the county, not the city. He took Ms. Floyd to the police station and turned her over to Deputy Bumpaous.

The court ruled that the statements made by Ms. Floyd to Officer Pittman were admissible as excited utterances, found Ms. Floyd to be unavailable, and found the statements were reliable under the factors set forth in *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970) and *State v. Parris,* 98 Wn.2d 140, 654 P.2d 77 (1982).

The jury was recalled and the trial proceeded. After Officer Pittman repeated his prior testimony before the jury, the State rested. Mr. Young moved to dismiss the case claiming the evidence presented by the State was not sufficient to prove first degree rape and second degree assault beyond a reasonable doubt. The court denied the motion.

Mr. Young testified he and Ms. Floyd had been living together since 1979, but they were not living together at the time of the alleged incident. He stated that on January 24, 1986, he spoke with Ms. Floyd via telephone and asked her if she would stop by and give him a ride into town. When she arrived, he took the mail to her and got into the car. They talked and agreed to get some food. Mr. Young went into the house and placed an order by telephone; they then drove to the Chinese Gardens. When they arrived at the restaurant, he got out of the car to pick up the food. When he came out, the car doors were open, and Ms. Floyd and the children were gone. Mr. Young stated he did not know charges had been brought against him until February 1, 1986, when he was arrested.

On cross examination, when told that Ms. Floyd was afraid of him, he replied, "Never once has there been a call made here about me striking her, me hitting her, me doing anything to her." The court allowed the State to introduce the testimony of Edward Kennelly, a sergeant with the Franklin County Sheriff's Department, to rebut the statement. He testified that on January 15, 1986, after a complaint by Ms. Floyd, he served a domestic violence restraining order on Mr. Young.

■ Mr. Young first contends the court erred in denying his motion to dismiss at the end of the State's case based on the insufficiency of the evidence. A defendant waives a challenge to the sufficiency of the evidence at the close of the State's case if he introduces evidence, on his behalf, unless the evidence has no bearing on the merits of the case. *State v. Allan,* 88 Wn.2d 394, 396, 562 P.2d 632 (1977); *State v. Wilson,* 74 Wn.2d 243, 248, 444 P.2d 141 (1968), *cert. denied,* 395 U.S. 903 (1969); *State v. Ramirez,* 46 Wn. App. 223, 225, 730 P.2d 98 (1986). A defendant can, however, always seek appellate review of the sufficiency of the evidence as a whole to support a criminal conviction. *State v. Kerry,* 34 Wn. App. 674, 677, 663 P.2d 500 (1983). Here, Mr. Young's testimony clearly had a bearing on the merits of the case as he denied committing the rape and the assault. Because he does not challenge the sufficiency of the evidence as a whole, but specifically assigns error to the trial court's denial of his motion to dismiss at the close of the State's case, and because he did not renew his challenge at any further stage of the proceedings, he has waived this assignment of error. *See State v. Martin,* 14 Wn. App. 717, 718, 544 P.2d 750, *review denied sub nom. State v. Rosi,* 87 Wn.2d 1001 (1976). Even if he had not so waived, the evidence, viewed most favorably to the State, would allow a rational trier of fact to find the essential elements of first degree rape and second degree assault beyond a reasonable doubt. *State v. Hughes,* 106 Wn.2d 176, 199, 721 P.2d 902 (1986).

Mr. Young next contends the court erred in determining Ms. Floyd was unavailable, thereby allowing Officer Pittman to testify concerning her statements. Given the facts surrounding Ms. Floyd's adamant refusal to testify, the court determined she was unavailable and her statements constituted excited utterances under ER 803(a)(2).[2] The court then determined the testimony did not violate Mr. Young's right of confrontation under the Sixth Amendment or under Const. art. 1, § 22 (amend. 10) given those findings.

The sixth amendment to the United States Constitution and article 1, section 22 of our constitution both guarantee a defendant in a criminal prosecution the right to confront his accusers. *State v. Terrovona,* 105 Wn.2d 632, 642, 716 P.2d 295 (1986); *State v. Ryan,* 103 Wn.2d 165, 169, 691 P.2d 197 (1984). Even though a hearsay statement may be admissible under the rules of evidence, it may still violate the defendant's right of confrontation. *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970); *State v. Guloy,* 104 Wn.2d 412, 424, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). Admissible hearsay does not violate the defendant's confrontation rights if the State demonstrates the declarant is unavailable and the hearsay statements are reliable. *State v. Hieb,* 107 Wn.2d 97, 106, 727 P.2d 239 (1986).

On appeal, Mr. Young only challenges the court's determination that Ms. Floyd was unavailable. He contends Ms. Floyd was not "unavailable" because she was neither incompetent nor did she exercise her Fifth Amendment

---

[2]ER 803 provides in part:

(a) **Specific Exceptions.** The following are not excluded by the hearsay rule, *even though the declarant is available* as a witness:

. . .

(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

(Italics ours.) Thus, ER 803 applies whether the declarant is available or unavailable.

privilege. Mr. Young ignores the statement in *State v. Ryan, supra* at 171 that:

Unavailability means that the proponent is not presently able to obtain a confrontable witness' testimony. It is usually based on the physical absence of the witness, but may also arise when the witness has asserted a privilege, *refuses to testify,* or claims a lack of memory. *See* ER 804(a); 5A K. Tegland, Wash. Prac., *Evidence* § 393 (2d ed. 1982). Unavailability in the constitutional sense additionally requires the prosecutor to make a good faith effort to obtain the witness' presence at trial.

(Italics ours.)

■ One of the definitions of "unavailability" in ER 804(a) is a declarant who "[p]ersists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so". *See State v. Toomey,* 38 Wn. App. 831, 838, 690 P.2d 1175 (1984), *review denied,* 103 Wn.2d 1012, *cert. denied,* 471 U.S. 1067 (1985). Although ER 804(a) defines "unavailability" for hearsay purposes, the *Ryan* court cites it to support its definition of "unavailability" for confrontation purposes. *See Ryan,* at 171. Both the court and the prosecutor made a good faith effort to obtain Ms. Floyd's presence and testimony at trial. The court did not err in finding her unavailable.

By finding no error, we do not mean this procedure to become a model for the trial of rape cases; rather, it is looked upon as an aberration. Those charged with crimes have both a federal and state constitutional right to confront their accusers.

Mr. Young's conviction is affirmed.

GREEN, J., concurs.

THOMPSON, A.C.J. (concurring)—I agree with the decision of the majority that, on the issues presented, Mr. Young's convictions should be affirmed. However, I feel compelled to write a separate opinion to emphasize that the precedential value of this case is limited by its unusual facts. The thrust of Mr. Young's appeal was an attack on the

finding of unavailability of the hearsay declarant and the resultant denial of his Sixth Amendment right of confrontation. The more germane issue is whether the hearsay statements bore sufficient indicia of reliability, given the peculiar facts of this case. Mr. Young failed to raise or address this issue in his appeal.

Even though a hearsay statement may be admissible under the rules of evidence, its introduction may still violate the defendant's right of confrontation. *California v. Green,* 399 U.S. 149, 155–56, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970); *Barber v. Page,* 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968); *Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965). The crucial question when deciding a confrontation clause issue regarding hearsay is not whether admission complies with common law hearsay rules, but whether it would be consistent with the purpose of the confrontation clause to advance the accuracy of the truth–determining process by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement". *Green,* 399 U.S. at 161, *quoted in State v. Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982).

When a hearsay declarant is not present and subject to cross examination at trial, the United States Supreme Court has required other assurances that the integrity of the truth–finding process will not be compromised. *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980) outlined a "general approach to the problem" of reconciling the hearsay rules with the Sixth Amendment's confrontation clause. *Roberts* set forth two general criteria: (1) unavailability of the hearsay declarant; (2) the prior testimony must have been obtained under circumstances providing satisfactory "indicia of reliability". *Roberts,* 448 U.S. at 65–66. With regard to the second criterion, the Court has held that reliability can be inferred, without more, in a case where the evidence falls within a firmly rooted hearsay exception. *Roberts,* 448 U.S. at 66. *See also Bourjaily v. United States,* __ U.S. __, 97 L. Ed. 2d 144, 107 S. Ct. 2775 (1987); *State v. Parris, supra* at 148. Here,

the defendant does not dispute the hearsay statement of the complaining witness was an "excited utterance". We have previously held, in an indecent liberties case involving hearsay statements of a child victim, that the excited utterance exception is "firmly rooted", and thus circumstantial guaranties of trustworthiness had been met and the statements were inferred to be reliable. *State v. Robinson,* 44 Wn. App. 611, 620, 722 P.2d 1379, *review denied,* 107 Wn.2d 1009 (1986). In *Puleio v. Vose,* 830 F.2d 1197 (1st Cir. 1987), the court observed that the United States Supreme Court has not spoken to whether excited utterance exceptions meet the *Roberts* test for reliability. *Puleio* resolved the issue in favor of inferring reliability, noting that excited utterance is a firmly rooted hearsay exception.

Nevertheless, while the court need not engage in an independent inquiry into the reliability of such statements which fall within firmly rooted exceptions to the hearsay rule, *see Bourjaily,* 107 S. Ct. at 2783, it should not ignore factors which weigh heavily in favor of the fundamental right to "face to face" confrontation guaranteed by the federal and state constitutions. In other words, it should not ignore facts rebutting the inference of reliability.

The United States Supreme Court has not created a hard and fast rule with regard to confrontation clause challenges to admission of hearsay, but instead has sought to balance the right of a criminal defendant to confront his accusers with the need for effective law enforcement, the aim being to ensure the integrity of the truth–finding process. *See United States v. Inadi,* 475 U.S. 387, 397, 89 L. Ed. 2d 390, 106 S. Ct. 1121 (1986); *Bourjaily,* 107 S. Ct. at 2782. I believe the balance may, in some cases, be struck in a defendant's favor even though evidence falls within a firmly rooted exception. A close reading of the cases suggests the balance favored admission when the amount of infringement on the defendant's Sixth Amendment right was minimal in comparison to the reliability and trustworthiness of the statements. In several instances, the defendant had been able to fully cross–examine the witness at a prior trial

or hearing, or the weighty admission against interests of a codefendant or coconspirator furnished enhanced reliability. *Ohio v. Roberts, supra; Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970); *California v. Green, supra. See also United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978).

Here, the complaining witness' hearsay statement was the *only* evidence of guilt. "Where a case stands or falls on the jury's belief or disbelief of essentially one witness, that witness' credibility or motive must be subject to close scrutiny", especially in prosecution of sex crimes where the right of cross examination may determine the outcome. *State v. Roberts,* 25 Wn. App. 830, 834, 611 P.2d 1297 (1980). Here, cross examination was critically important, given the complaining witness' refusal to testify, her clearly expressed anger at the police at the time the hearsay statement was made and thereafter, for not having done something to get help for the mentally ill defendant,[3] even though they had been summoned on a number of occasions, and the prior assaults, all of which the trial court was aware. These unique facts undermine the traditional indicia of reliability inferred from the "firmly rooted" hearsay exception. Thus, while in the usual case, a defendant's Sixth Amendment right to confront his accusers is not violated by admitting the excited utterance of an unavailable witness, the facts here strongly suggest otherwise. Officer Pittman's testimony falls within what is referred to in *Dutton* as "crucial" and "devastating" evidence. The testimony not only goes to the heart of the case, but it is basically all there is. Officer Pittman was not able to testify to "what happened". He could only testify to "what he was told happened". The jury was not able to view the demeanor of the complaining witness; though Officer Pittman was under oath, the person whose testimony is critical was not; defense counsel was severely limited in cross–examining

---

[3]As noted by the majority, expert testimony established the defendant was insane at the time of the acts.

Officer Pittman since the officer's knowledge was limited by what he had been told; the usual cross examination which can test the presence or absence of sufficient facts to prove each element of the crimes charged cannot be undertaken since the witness on the stand does not have the knowledge to answer the questions.

Nevertheless, limited to those issues and assignments of error raised on appeal, agreeing with the court's opinion regarding the unavailability of the declarant, I am constrained to affirm.