36 P.3d 1119 (2001)
109 Wash.App. 648
STATE of Washington, Respondent,
v.
Steven Ivor RICHARDS, IV, Appellant.
No. 26130-8-II.
Court of Appeals of Washington, Division 2.
December 28, 2001.
*1120 Zenon Peter Olbertz, Tacoma, for Appellant.
Randall Avery Sutton, Kitsap County Deputy Prosecuting Attorney, for Respondent.
QUINN-BRINTNALL, J.
Steven Ivor Richards appeals his conviction of two counts of forgery (Count I and Count II), arguing that the State provided insufficient evidence to support either count and that the trial court erred in allowing the State to file an amended information after the speedy trial period expired. We reverse in part, finding insufficient evidence to support Count I, but affirm the forgery conviction alleged in Count II of the amended information.

FACTS
On June 10, 1997, Washington State Patrol Trooper Jacob McMillen was on routine patrol when he saw a motorcycle lying on its side at the edge of the road. When McMillen approached, Richards and a woman were standing beside the motorcycle.
When McMillen asked Richards if he had a driver's license, Richards presented a laminated Idaho license with the name "Kyle A. Richardson" typed and signed on it. McMillen examined it and thought that the photo and physical description matched Richards.
McMillen subsequently arrested Richards for DUI and took him to the Kitsap County Jail. McMillen filled out a uniform traffic citation for driving under the influence and asked Richards to sign it in the space indicated. In printed text above the signature block, the citation stated, "Without admitting having committed each of the above offense or offenses, I promise to respond as directed on this notice." Report of Proceedings (5/23/00) at 28-29. Richards signed the citation using the name "Kyle Richardson." After being photographed and fingerprinted, he was released.
After Richards failed to appear in court on the DUI citation, the court issued a bench warrant in the name of "Kyle Richardson." After receiving the warrant, the real Richardson called McMillen and said that he had never been to Kitsap County and had not been arrested for DUI. McMillen asked him to forward a copy of his driver's license, which Richardson did. Although the copy was of poor quality, McMillen wrote in a report that the photo on the license did not appear to be the person he had arrested for DUI.
McMillen then had Richards's fingerprints processed and discovered his true identity as well as the fact that he was wanted on outstanding warrants. Richards was arrested in Kitsap County on March 16, 2000, and was charged with forging a Washington uniform traffic citation.
On May 2, 2000, Richards waived his speedy trial rights through May 29, 2000, and agreed to a trial date of May 22, 2000. The omnibus order entered on May 2 specified that further arraignment would be on May 17, 2000, and Richards was aware of the further arraignment contemplated by the order. On May 17, the further arraignment was set over to the day of trial.
Richards filed a Knapstad[1] motion to dismiss, alleging that the citation was not a written instrument and that signing the promise to appear with a false name did not constitute forgery. The trial court denied the motion.
On May 22, 2000, the State filed an amended information that added a second count of forgery based on Richards's presentation of a driver's license bearing Kyle Richardson's name. Defense counsel had been provided a copy of the amended information on May 17.
Richards objected to his May 23 arraignment on the amended information on the grounds that the new charge violated the speedy trial rule. The court overruled his objection.
Richards waived his right to a jury and the case was tried to the court. At trial, McMillen testified to the facts cited above, except *1121 with regard to the faxed license from Richardson. Although the trial court ruled that the faxed copy of the Richardson license was inadmissible, it allowed the following exchange between the prosecutor and McMillen concerning that copy:
Q. Detective, based upon your review of the facsimileand you had testified earlier that it had a photocopy of a driver's license as page two-do you have an opinion about whether the license handed to you on June 10th, 1997, is the same or different from the license that was faxed to you?
...
A. I don't recall.
Q. I don't recall whether you have an opinion, or you don't recall any difference?
A. The night of the arrest, I examined the driver's license, was satisfied that the person I had matched the driver's license, and didn't spend any time, you know, in great detail, studying the driver's license.
...
Q. And do you recall whether that license-whether the picture in that license was any different from the picture that you received via facsimile?
A. I don't recall a difference in the photo.
Report of Proceedings (5/23/00) at 46-47. After McMillen testified, the State introduced a fingerprint expert who stated that Richards's fingerprints were on the fingerprint card bearing Richardson's name. The defense did not present any witnesses, and the court found Richards guilty as charged.
At the hearing on the entry of the trial court's written findings and conclusions in support of the convictions, Richards challenged the court's finding that the photo on the license "matched" him. Richards also asked the court to reconsider its finding of guilt relating to the corresponding count. The court postponed entry of the findings as well as a ruling on the motion for reconsideration and ordered that a report of proceedings of the trooper's testimony be prepared.
After examining the transcript and hearing argument, the trial court denied Richards's motion for reconsideration but amended its written findings to state that the photo "appeared to match" Richards. Report of Proceedings (6/7/00) at 6-7. The court then imposed a standard range sentence of six months. Richards now appeals.

ANALYSIS

I
Richards argues initially that the trial court erred in denying his Knapstad motion to dismiss the forgery count involving the uniform traffic citation.
The State responds correctly that a defendant who goes to trial cannot appeal the denial of a Knapstad motion, which is a pretrial challenge to the sufficiency of the evidence. State v. Jackson, 82 Wash.App. 594, 608, 918 P.2d 945 (1996). Although the defendant is not barred from a subsequent challenge to the sufficiency of the evidence, such a claim will be analyzed as a challenge to the evidence produced at trial. See Jackson, 82 Wash.App. at 608, 918 P.2d 945.
Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wash.2d at 201, 829 P.2d 1068. In determining whether the necessary quantum of proof exists, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case. State v. McKeown, 23 Wash.App. 582, 588, 596 P.2d 1100 (1979).
Richards contends that the evidence was insufficient to support his conviction for forging the traffic citation because such a citation has no legal efficacy and thus is not a written instrument susceptible to forgery.
RCW 9A.60.020(1) sets forth the crime of forgery:

*1122 A person is guilty of forgery if, with intent to injure or defraud:
(a) He falsely makes, completes, or alters a written instrument or;
(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged.
Former RCW 9A.60.010(1) (1987) defines a "written instrument" as follows:
"Written instrument" means: (a) Any paper, document, or other instrument containing written or printed matter or its equivalent; or (b) any access device, ... token, stamp, seal, badge, trademark, or other evidence or symbol of value, right, privilege, or identification[.]
Washington courts have read into that definition the common-law requirement that the written instrument have "legal efficacy." State v. Morse, 38 Wash.2d 927, 929, 234 P.2d 478 (1951). That is, the instrument must be "something which, if genuine, may have legal effect or be the foundation of legal liability." State v. Scoby, 57 Wash.App. 809, 811, 790 P.2d 226 (1990), affirmed, 117 Wash.2d 55, 810 P.2d 1358 (1991).
Richards argues that the citation issued served only to notify him of the DUI charge and had no legal effect. He also contends that the citation was complete whether he signed it or not.
We observe initially that it is forgery to sign the name of another person with the intent to defraud. CHARLES E. TORCIA, 4 WHARTON'S CRIMINAL LAW, § 479 at 75 (15th ed.1996). The same authority notes that any government or public record is susceptible to forgery. 4 WHARTON'S CRIMINAL LAW, § 491 at 93. "[A]ny document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties may be the subject of forgery." 4 WHARTON'S CRIMINAL LAW, § 491 at 94 (footnote omitted).
It is part of a state trooper's duties to issue a traffic citation to someone suspected of violating the state's traffic laws. RCW 46.64.015. Such a citation "shall include ... a place where the person arrested may sign." RCW 46.64.015. The statute adds that in order to secure release, the arrested person "must give his or her written promise to appear in court as required by the citation and notice by signing in the appropriate place the written citation and notice served by the arresting officer...." RCW 46.64.015. The detention arising from an arrest for a traffic violation may be no longer than reasonably necessary unless the arrested person refuses to sign a written promise to appear in court as required by the citation. RCW 46.64.015(1).
It thus appears that the "promise to appear" portion of a citation is an essential feature of a traffic citation. If the arrestee refuses to sign the citation, he or she may be held in jail. Furthermore, if the arrestee signs and then fails to appear as promised, a bench warrant may result, as it did in the present case. See CrRLJ 2.5. Therefore, attempting to obtain an arrestee's signature on a citation is necessary to the discharge of a state trooper's public duties. The failure to give that signature has legal effect, as does the failure to appear as promised after a signature is provided.
We conclude that a signed traffic citation is a written instrument with legal efficacy that may be susceptible to forgery. See State v. Wasson, 125 N.M. 656, 964 P.2d 820, 822 (App.1998) (concluding that the forgery statute includes uniform traffic citations among the types of writings which may purport to have legal efficacy); see also Rushing v. State, 684 So.2d 856, 857 (Fla.Dist.Ct.App. 1996) (signing another's name to a traffic citation constitutes forgery). By signing another's name to the citation at issue, Richards falsely completed a written instrument. The evidence was sufficient to support the forgery conviction as charged in Count II.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: ARMSTRONG, C.J., and HUNT, J.
NOTES
[1] State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986).