**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ricky Lynn DANIEL, Defendant–
Appellant.**

No. 92–7292
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1993.

Thomas A. Pritchard, Biloxi, MS (court-appointed), for defendant-appellant.

Calvin D. Buchanan, Asst. U.S. Atty., Robert Q. Whitwell, U.S. Atty., Oxford, MS, for plaintiff-appellee.

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

Ricky Lynn Daniel was convicted of one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). On appeal, he claims that the Government violated his Fourth Amendment rights in various ways. Finding no unconstitutional search or seizure, we affirm the judgment of the district court.

I.

On September 26, 1992, an unidentified American Airlines employee in Memphis,

Tennessee, called a Drug Enforcement Administration (DEA) investigator and reported a "suspicious" package that was being shipped by the airline. The employee suspected that the package contained narcotics. The employee noted that this was at least the second such package shipped by the sender to the same address in a single week. Moreover, the employee noted, the private courier's shipping fee ($55) was rather expensive for such a small package that could just as easily have been mailed for a fraction of the cost. A DEA investigator, J.C. Sneed, arrived at the airport within an hour. Upon his arrival, Sneed was shown a small cardboard box addressed to "Lynn Neal c/o Dottie's Hair Design," a beauty salon located in Nettleton, Mississippi; the return address was a residence in San Bernardino, California. The addresses on the box were handwritten, and the return address did not contain a zip code. Sneed also observed that all the seams in the package were securely sealed with masking tape. According to the receipt completed by the sender, the box contained "parts." Sneed shook and squeezed the box. Because the box did not rattle, Sneed questioned whether in fact it contained parts of any type. He shared the American Airlines' employee's suspicions that the package possibly contained illicit drugs.

In order to confirm his suspicions, Sneed summoned another DEA investigator, Boyd Schaeffer, who handled a narcotics-detecting dog. The second agent arrived at the airport shortly thereafter. A dog-sniff test indicated that the box indeed contained narcotics. Sneed took possession of the box and applied for a search warrant to examine its contents. After obtaining a search warrant soon thereafter, Sneed opened the box and discovered plastic bags filled with a white powdery substance that, after testing, proved to be methamphetamine. Sneed arranged with other DEA agents and Mississippi authorities to make a controlled delivery of the box using an undercover agent as a delivery person.

The agents placed a beeper inside the box designed to transmit a signal when it was opened and procured an anticipatory warrant to search the address listed on the box. Baking powder was substituted for the majority of the methamphetamine, and agents placed a material in the powder that could be detected under ultraviolet light. After the box was delivered to Daniel's trailer and was opened by him, the agents executed the search warrant. Agents discovered the box in a bedroom and empty baggies by the toilet. They held a black light to Daniel's hand that showed he had come in contact with the ultraviolet powder in the box. Daniel waived his rights and signed a statement indicating that he was paid $300 to receive each package and that he had received five or six packages in the past.

## II.

On appeal, Daniel argues: i) that the package was illegally searched and seized without a warrant in the first instance, contending Agent Sneed had no reasonably articulable suspicion that the box contained an illicit substance; ii) that the search pursuant to the first warrant issued in Tennessee, which allowed agents to open the box, was unconstitutional; and iii) as a result, the evidence and confession derived from the Mississippi warrant was "tainted fruit." We reject all three arguments.

A. Was there an unlawful warrantless "search" or "seizure"?

Daniel initially challenges the DEA agents' conduct *prior* to obtaining the first search warrant in Tennessee. Thus, he challenges the initial detention of the box and the dog-sniff test. Daniel argues that the package was searched and seized in violation of his Fourth Amendment rights because DEA Agent Sneed had no reasonably articulable suspicion that the package contained drugs. According to Daniel, because the package was not shown to be distinguishable from any of the other millions of packages placed in the mail daily, and because there was no showing that the American Airline's employee was a reliable informant, the package was illegally seized. We reject Daniel's contention here for two different reasons.

First, we do not believe that Daniel possessed "a legitimate expectation of privacy" under the Fourth Amendment, *see Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 428–29, 58 L.Ed.2d 387 (1978); *Rawlings v. Kentucky,* 448 U.S. 98, 106, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980), in a package addressed to "Lynn Neal." At trial, Daniel's theory of defense was that Ricky Lynn Daniel and Lynn Neal were different persons.[1] If we accept this dubious contention, then Daniel has no "standing"[2] to raise a Fourth Amendment challenge to the Government's conduct with respect to a package addressed to someone else. *See United States v. Pierce,* 959 F.2d 1297, 1303 (5th Cir.1992); *United States v. Koenig,* 856 F.2d 843, 846 (7th Cir.1988). Furthermore, even if we accept the Government's assertion that "Lynn Neal" was Daniel's alias, we still question whether Daniel would have Fourth Amendment "standing" to assert the claim, particularly when the use of that alias was obviously part of his criminal scheme. *See United States v. Lewis,* 738 F.2d 916, 919–20 n. 2 (8th Cir.1984).[3]

Nevertheless, even assuming Daniel possessed some type of legitimate expectation of privacy in connection with the package, we believe that the DEA agents did not violate it by acting as they did prior to obtaining the warrant permitting a full-blown search. Our analysis here is bifurcated: we first must assess the constitutionality of the alleged warrantless *seizure* of the box; second, we must then determine if the alleged warrantless *search* was in violation of the Fourth Amendment.

Contrary to the Government's claims, we agree that there was a warrantless "seizure" within the meaning of the Fourth Amendment. Although the initial detention of the box by the American Airline's employee was not a seizure for Fourth Amendment purposes—as the employee was not acting on behalf of the Government, *see United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)—we agree with Daniel that DEA Agent Sneed's actions constituted a seizure.[4] The record indicates that in the time leading up to the dog-sniff test, Agent Sneed exercised control over the box for approximately forty-five minutes.

The question that we must address, however, is whether that relatively brief investigatory seizure of the package was reasonable; if so, there was no Fourth Amendment violation. *Cf. Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (brief investigatory detention of person constitutionally permissible when officer has reasonably articulable suspicions based on particular facts that detainee has violated law). We note that the Tenth Cir-

1. The Government offered evidence that "Lynn Neal" was simply an alias of Ricky Lynn Daniel, including evidence that Daniel had registered his trailer with a utility company in the name of "Lynn Neally."

2. In *Rakas v. Illinois, supra,* the Supreme Court "dispens[ed] with the rubric of [Fourth Amendment] standing ... by frankly recognizing that this aspect of analysis belongs more properly under the heading of substantive Fourth Amendment doctrine," leading the Court to focus "on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." 439 U.S. at 138–39, 99 S.Ct. at 427–28. Nevertheless, the term "standing" has been used by courts since *Rakas* as shorthand for the existence of a privacy or possessory interest sufficient to assert a Fourth Amendment claim. *See, e.g., United States v. Richards,* 638 F.2d 765, 769 (5th Cir. 1981).

3. As the *Lewis* court stated in a case involving an analogous factual situation, "[t]he opening of the tax bill addressed to [Lewis' alias] 'David E. Woods' and not to Lewis cannot be said to have infringed *his* reasonable privacy expectations.... [Furthermore,] [a] mailbox bearing a false name ... used only to receive fraudulently obtained mailings does not permit an expectation of privacy that society is prepared to recognize as reasonable" under the Fourth Amendment. *Id.*

4. The Government's brief is incorrect in contending that Agents Sneed and Schaeffer arrived at the airport at the same time and immediately proceeded to subject the box to a dog-sniff test. Rather, as Agent Sneed testified at the pre-trial suppression hearing, he arrived well before Agent Schaeffer and the drug-detection dog. Prior to the arrival of Schaeffer, Sneed physically handled the box—squeezing and shaking it—and obviously exercised dominion over it.

cuit has addressed this precise application of the *"Terry* doctrine" in a case involving facts essentially identical to the instant case. *See United States v. Lux,* 905 F.2d 1379 (10th Cir.1990), *aff'g, United States v. Hill,* 701 F.Supp. 1522 (D.Kan.1988); *cf. United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); 3 W. LaFave, *Search and Seizure,* § 9.6 (2d ed. 1987) ( & Supp.). The *Lux* court concluded that a temporary seizure of a mailed package—removing it from the normal flow of mail—was not a Fourth Amendment violation because postal inspectors acted on legitimate suspicions. The court discussed the Postal Service's "drug package profile," a list of traits commonly encountered in the vast majority of illicit mailings of drugs. *See Lux,* 905 F.2d at 1381–82; *see also United States v. Cantrall,* 762 F.Supp. 875, 879–80 (D.Kan. 1991).[5] Like the *Lux* court, we believe that while any one of these factors standing alone might not provide reasonable suspicion, an aggregate of factors passes muster under the *Terry* doctrine. *See Lux,* 905 F.2d at 1382 (three factors present); *Cantrall,* 762 F.Supp. at 879 (three factors present).

In the instant case, although the package was not being handled by the Postal Service, the DEA agents nevertheless appeared to have utilized the same "drug package profile" in articulating their suspicions justifying the temporary seizure of the package until a dog-sniff test could be conducted. At Daniel's suppression hearing, Agent Sneed explained that his suspicions were aroused by the following: i) the package's size and shape, which belied a shipment of "parts," the alleged contents declared by the sender; ii) the fact that the package was securely taped with masking tape all along the seams; iii) the fact that the labels were hand-written, even though the mailing was allegedly business-related; iv) the fact that the American Airlines' employee reported that this was the second such mailing in a week; v) the fact that the sender paid a hefty fee ($55) to ship the relatively small package via private air courier; and vi) the fact that the sender's city was a common "drug source." Thus, we believe that, under widely accepted law enforcement standards regarding the detection of drug-related mailings, the DEA's suspicions in this case were reasonable. The temporary seizure, which lasted no more than an hour, was constitutional.[6]

■ We next turn to the dog-sniff test to which the package was subjected. In an analogous case involving luggage that was checked with an airline, this court emphasized the distinction between an individual's privacy interest in the interior and exterior of his bags. We held that a passenger has a reasonable expectation of privacy that the contents of his luggage will not be exposed absent consent or a search war-

5. Included among those "drug package profile" characteristics are: i) the size and shape of the package (particularly in view of the declared contents of the package); ii) whether the package is taped to seal all openings; iii) whether mailing labels are hand-written; iv) whether the return addressee and the return address listed on the package match; v) unusual odors coming from the package; vi) whether the city of origin and/or city of destination of the package are common "drug source" locales; and vii) whether there have been repeated mailings involving the same sender and addressee. *See Cantrall,* 762 F.Supp. at 879.

6. Daniel argues that under *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), even such a brief seizure is unconstitutional. We believe Daniel misinterprets the Court's holding in that case. *Place* involved the temporary seizure of an airline passenger's luggage during a flight. The Court stressed that law enforcement authorities could properly temporarily detain the luggage and subject it to a dog-sniff test without a warrant under the *Terry* doctrine if there were reasonable grounds for suspicion. The Court held that such a detention must be extremely brief. The ninety minute seizure in *Place* was considered excessive. *See id.* at 700–710, 103 S.Ct. at 2641–46. *Place* is readily distinguishable from the instant case in that *Place* involved a temporary seizure of *luggage* from a passenger, while the instant case involves a temporary seizure of a shipped package which was unaccompanied by a traveler. The holding of the *Place* court was premised on the violation of the passenger's possessory interest in his luggage. *Id.* at 705, 103 S.Ct. at 2643. No similar possessory interest is present in a package relinquished by the sender to the airline. Furthermore, in this case, Daniel was not even the sender, but was merely the addressee. *Place* is inapposite.

rant. *United States v. Lovell*, 849 F.2d 910, 913 (5th Cir.1988) (citation omitted). This reasonable expectation of privacy, however, does not extend to the airspace around the luggage. *Id.* Thus, a canine sniff of the outside of a bag is not a "search" within the meaning of the Fourth Amendment and a " 'reasonable and articulable suspicion is not required before a DEA agent may use a canine trained in drug detection to sniff luggage in the custody of a common carrier.' " *Id.* (*quoting United States v. Goldstein*, 635 F.2d 356, 361–62 (5th Cir.), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981)); *see also Place*, 462 U.S. at 706–07, 103 S.Ct. at 2644.

**B. Was the search and seizure pursuant to the Tennessee warrant constitutional?**

■ Daniel also contends that the warrant issued by the magistrate judge in Tennessee, which permitted investigators to open the package, was defective because the affidavit supporting the application for the warrant did not establish the reliability of the anonymous informant or the accuracy of the information provided by the informant, nor did it specify the qualifications of the dog that sniffed the luggage.

Prior to *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), courts utilized a rigid two-pronged test for measuring the sufficiency of information in an affidavit necessary for the purposes of issuing a warrant. Under the two-prong test, a police affidavit based on an anonymous informant's tip had to, first, adequately reveal the informant's basis of knowledge and, second, provide sufficient facts to establish either the veracity of the informant or the reliability of the information. *Id.* at 228–29, 103 S.Ct. at 2326–27. In *Gates*, the Supreme Court required a

magistrate merely to consider these two issues as part of a larger "totality of the circumstances" analysis. Neither prong is to be considered determinative. *Id.* at 230, 103 S.Ct. at 2328. Daniel seems to rely on the pre-*Gates* standard in arguing that the American Airlines employee was an unreliable informant. Under *Gates* it is not fatal that the affidavit did not vouch for the reliability of the informant. The focus of the inquiry is whether there were sufficient facts as a whole to support a determination of probable cause. In this respect, the dog sniff, when considered with the other information, served to show the reliability of the informant.

■ A valid search warrant may be issued only upon a finding of probable cause. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991). Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity. *Id.* A magistrate's findings on the issue of probable cause are entitled to great deference. *Id.* This Court looks to see only whether a magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id.* (citation omitted).

The DEA investigator's affidavit established that he was an experienced drug investigator, that the package was suspicious for a variety of specific reasons, that it came from a source city for drugs, that the dog alerted to the package, and that drug dealers often ship drugs via private common carrier. The affidavit also specifically explained that the dog was trained to detect the presence of controlled substances.[7] This information clearly consti-

---

7. Daniel's reliance on dicta in *Horton v. Goose Creek Independent School Dist.*, 677 F.2d 471, 486 (5th Cir.1982), to establish the proposition that the author of an affidavit must demonstrate the reliability of the police dog before a warrant is issued is misplaced. This citation of *Goose Creek* is not controlling because it is premised on *Goose Creek*'s treatment of the dog-sniff test as a search; this part of the decision was subsequently vacated on rehearing. *Horton v. Goose*

*Creek Independent School Dist.*, 690 F.2d 470, 477 (5th Cir.1982) (substituted opinion on rehearing). Neither *Goose Creek* nor other case law supports Daniel's theory that an affidavit must show how reliable a drug-detecting dog has been in the past. Further, there was trial testimony concerning the dog's reliability—testimony that went unchallenged by Daniel's trial counsel.

**152**

tutes a substantial basis for issuing a warrant. We thus reject Daniel's claim.

C. Was the search and seizure pursuant to the Mississippi warrant tainted fruit?

Daniel's final argument is that the second warrant issued—permitting authorities to search his trailer in Mississippi—was defective because it relied on and incorporated information from the earlier, allegedly defective Tennessee warrant authorizing investigators to search the package at the airport. Daniel claims that the evidence seized by investigators and the statements made by Daniel following his arrest are "tainted fruit of the poisonous tree" and, thus, should have been suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As explained *supra*, however, the initial warrant was proper. Moreover, undoubtedly, the second search warrant was based on probable cause. After all, the package being sent to the Mississippi address that was ultimately searched contained pure methamphetamine. Therefore, we reject Daniel's final claim as well.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.