**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ROBERT LOZANO, SR.,
            *Defendant-Appellant.*

No. 09-30151

D.C. No.
4:08-cr-00009-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
July 28, 2010—Anchorage, Alaska

Filed October 18, 2010

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain and
Richard R. Clifton, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge O'Scannlain

17159

## COUNSEL

Robert John, Fairbanks, Alaska, argued the cause and filed the briefs for defendant-appellant Robert Lozano, Sr.

Craig M. Warner, Assistant United States Attorney, Anchorage, Alaska, argued the cause for plaintiff-appellee United States. Jo Ann Farrington, Assistant United States Attorney, Anchorage, Alaska, filed the brief. Karen L. Loeffler, United States Attorney, Anchorage, Alaska, also was on the brief.

## OPINION

PER CURIAM:

We must decide, among other issues, whether the admission of marijuana evidence, found in a mailed package

delayed twenty-two hours in delivery due to the remoteness of the site from canine investigation, violates the Fourth Amendment.

I

A

1

In the spring of 2007, Robert Lozano, Sr., shared a residence in Barrow, Alaska, with his son, who was on state probation. Based on suspicion that Lozano's son had violated the terms of his probation, state officers conducted a search of the son's room and of the common areas of Lozano's home, and found concealed drugs and firearms. Lozano returned home during the search, and the officers told him they found drugs in his home. Lozano responded by asking if they were in "bags or baggies."

After this exchange, Lozano consented, in a recorded conversation, to a search of the rest of the residence. In his bedroom, officers discovered $12,500 cash, to which Barrow's drug-sniffing dog, Hershey, alerted as having been in contact with drugs, and photographs of Lozano at a marijuana "grow" in California. In a storage area next to Lozano's residence, officers found two baggies of marijuana and an automatic handgun. Lozano was not charged with respect to these probation and consensual searches.

2

During the winter of 2007, Lozano asked the then-manager of the Barrow post office, Zachariah Martinez, whether postal workers screened mail, whether police brought detection dogs into the post office, and whether postal employees could open packages to look for drugs. Because these questions were

suspicious, Martinez contacted Postal Inspector Kaminski, who authorized a "mail watch" on Lozano's P.O. box.

On January 31, 2008, a package arrived at the Barrow post office that aroused Martinez's suspicions. It was a large, heavily taped U-Haul box that originated in California and had an incomplete return address. The box was addressed to "Bill Corner," although the P.O. box number was Lozano's. Neither Martinez nor the other postal employee in the 4,000-person town of Barrow had ever heard of a "Bill Corner."

Martinez contacted Inspector Kaminski, who was in Anchorage at the time training Hershey. Kaminiski requested that the package be sent to him there. Accordingly, instead of placing a claim slip in the P.O. box to which the package was sent, which Martinez would have otherwise done that afternoon or early the next day, Martinez placed the package into a larger, protective box and shipped it to Kaminski. Because there are only two flights from Barrow to Anchorage each day, the package reached Kaminski the afternoon of the next day, February 1.

At 2 p.m. that afternoon, Kaminski brought Hershey near the package. Hershey alerted. On that basis, Kaminski obtained a search warrant for the package. Upon opening the package, officers discovered eleven pounds of marijuana.

The officers then planned a controlled delivery of the package to the P.O. box in Barrow to which it was sent, fitting the package with a tracking device. On February 4, Lozano picked up the controlled delivery package with a friend and took it to the residence of the friend's mother. Officers discovered the discarded package, including the tracking device, in a dumpster across from the residence. Lozano was arrested that day, with $2,000 cash in his pocket. Hershey later alerted to the money.

B

A federal grand jury returned an indictment, charging Lozano with a single count of attempted possession of marijuana with intent to distribute. *See* 21 U.S.C. §§ 841(b)(1)(D), 846. Lozano filed motions to suppress the evidence discovered in his home during the probation and consensual searches and the evidence discovered in the search of the mailed package. Adopting the recommendation of the magistrate judge, the district court denied both motions.

During the trial, the court denied Lozano's motion to exclude the evidence seized from his home during the probation and consensual searches as inadmissible under Federal Rules of Evidence 404(b) and 403. The jury found Lozano guilty of attempted possession of marijuana with intent to distribute. The judge sentenced Lozano to fifteen months' imprisonment, which Lozano has now served, and two years' supervised release, which is still running. Lozano timely appeals.

II

Lozano first argues that the district court should have granted his motion to exclude the evidence discovered in the probation and consensual searches of his home under Federal Rules of Evidence 404(b) and 403.

A

**[1]** "Rule 404(b) provides that the district court may admit evidence of prior bad acts if it (1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4) in some cases, is similar to the offense charged." *United States v. Banks*, 514 F.3d 959, 976 (9th Cir. 2008) (internal quotation marks omitted). However, "when offered to prove knowledge, . . . the prior act need not be similar to the charged act as long as the prior act was one

which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) (quoting *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326 (9th Cir. 1992)). We "review a district court's admission of evidence under Federal Rule of Evidence 404(b) for an abuse of discretion." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).

**[2]** Here, the district court did not abuse its discretion in concluding that all of the Rule 404(b) requirements were met and thus that Rule 404(b) did not forbid admission of the evidence. The evidence of Lozano's prior possession or sale of narcotics was material to issues of knowledge and intent with respect to drug distribution. *See Vo*, 413 F.3d at 1018. It was not too remote in time because the search occurred merely eight months before the charged offense and the marijuana grow pictures dated merely three years before the offense. *See Banks*, 514 F.3d at 976-77; *see Vo*, 413 F.3d at 1019. There was sufficient evidence to support Lozano's involvement with the evidence discovered in the search because Lozano admits that the cash smelling of marijuana was found in his bedroom and the photographs of a marijuana "grow" included him. *See United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).

## B

"Even if the proffered evidence satisfies these requirements [of Rule 404(b)], the district court should decline to admit it [under Rule 403] if its probative value is substantially outweighed by the danger of unfair prejudice." *Banks*, 514 F.3d at 976 (internal quotation marks omitted). Again, we review the district court's admission of evidence under Rule 403 for abuse of discretion. *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004).

**[3]** We are satisfied that the district court did not abuse its discretion in admitting the evidence under Rule 403. Here, the

evidence of prior drug distribution is clearly probative of Lozano's intent and knowledge, and prejudice was limited by a cautionary instruction. *See Vo*, 413 F.3d at 1019; *Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) (en banc). Therefore, the district court did not abuse its discretion in admitting the home search evidence.

### III

Lozano also argues that the district court should have granted his motion to suppress the marijuana evidence discovered in the search of the mailed package. Specifically, Lozano argues that the postal inspector lacked reasonable suspicion to detain the package past its delivery time and that the detention of the package was unreasonable.

### A

**[4]** "Postal workers may detain a package to conduct an investigation if they have a reasonable and articulable suspicion that it contains contraband or evidence of illegal activity." *United States v. Hernandez*, 313 F.3d 1206, 1210 (9th Cir. 2002) (internal quotation marks omitted). To determine whether reasonable suspicion exists, courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing," *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted), as "understood by those versed in the field of law enforcement," *United States v. Cortez*, 449 U.S. 411, 418 (1981).

**[5]** Here, Inspector Kaminski had reasonable suspicion. The postmaster warned Kaminski that Lozano was behaving suspiciously, specifically asking whether mail could be searched for drugs. *See United States v. Aldaz*, 921 F.2d 227, 229 (9th Cir. 1990). In addition, the package listed a fictitious sender and addressee and an incomplete return address, was shipped with delivery confirmation service, had a handwritten

label, had been mailed from California, and was heavily taped. *See Hernandez*, 313 F.3d at 1211 (holding inspector had reasonable suspicion when the return sender was fictitious, the package was shipped special delivery, the label was handwritten, the package had been mailed from California, and the package had been taped up at all the seams). Therefore, we are satisfied that Kaminski had reasonable suspicion to detain the mailed package.

B

**[6]** "[E]ven if the initial seizure of a mailed package is based on reasonable suspicion, a prolonged detention is unreasonable under the Fourth Amendment." *Hernandez*, 313 F.3d at 1212. The relevant time period is that between the initial detention and that at which probable cause is developed because "[p]robable cause is sufficient to support the subsequent detention of the package." *United States v. Hoang*, 486 F.3d 1156, 1160 n.1 (9th Cir. 2007).

**[7]** We have upheld as reasonable a five-day delay arising because of the difficulty of travel for canines in Alaska. *Aldaz*, 921 F.2d at 231; *see also United States v. Van Leeuwen*, 397 U.S. 249, 252-53 (1970) (holding reasonable twenty-nine hour delay); *Hernandez*, 313 F.3d at 1212 (holding reasonable one-day delay); *United States v. Gill*, 280 F.3d 923, 929 (9th Cir. 2002) (holding reasonable six-day delay). Here, the delay was less than one day and also was caused by the difficulty of canine travel in Alaska. The package arrived at the Barrow post office on January 31, 2008. The earliest it could have been delivered was 4:30 p.m. that day. The canine's "alert," which "create[s] probable cause," *Hoang*, 486 F.3d at 1160 n.1, occurred at 2:15 p.m. on February 1, less than 22 hours later. In addition, the delay arose because the drug-sniffing dog was temporarily unavailable. *Aldaz*, 921 F.2d at 231. We are satisfied that the length of detention between initial seizure and the development of probable cause was not unreasonable.

Lozano argues that the government should have notified him that delivery was delayed, citing *United States v. Place*, 462 U.S. 696 (1983). But that case involved the detention of luggage, which interferes with a traveler's significant interest in liberty of movement. *Place*, 462 U.S. at 708-10. Lozano cites no authority for the proposition that notice is required for delays of mail delivery. That is not surprising, because such authority would render futile the well-established technique of arranging controlled deliveries. The delay was not unreasonable on account of lack of notice.

**[8]** Lozano also argues that the detention of the package was unreasonable because the package was transported to Anchorage without probable cause. But we have held that "an addressee's possessory interest is in the timely delivery of a package, not in having his package routed on a particular conveyor belt, sorted in a particular area, or stored in any particular sorting bin for a particular amount of time." *Hernandez*, 313 F.3d at 1210 (internal quotation marks omitted); *see United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009). Indeed, we have approved as reasonable the diversion of packages during investigations based on reasonable suspicion. *E.g.*, *Aldaz*, 921 F.2d at 231. Such action is often the most reasonable way of enforcing drug laws in remote communities. *Id.* at 231. We conclude that the transportation of the package from Barrow to Anchorage without probable cause did not make the detention unreasonable. Accordingly, the district court properly denied Lozano's motion to suppress the evidence discovered in the search of the package.

IV

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.[1]

---

[1]Lozano's motion to supplement the record with exhibits presented at trial is denied as moot because those exhibits were in the district court record.

O'SCANNLAIN, Circuit Judge, specially concurring:

I join the court's opinion. I write separately because, in my view, this case is more easily resolved on the ground that Lozano did not have a legitimate expectation of privacy in the mailed package and therefore had no Fourth Amendment standing to challenge the admission of the marijuana evidence.

I

Before addressing the merits of this issue, I pause to consider whether it is properly before us. I believe it is. The government raised standing at trial. Lozano argues, however, that the government has since waived the issue. But "[w]e may affirm a district court's denial of a motion to suppress on any basis supported in the record." *United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir. 2005). Lozano's argument is particularly unavailing in the Fourth Amendment standing context. We have held that even if the government does not raise standing in the district court, "[s]o long as the government did not rely on facts contrary to its standing argument before the district court, the standing issue is properly before us on appeal." *United States v. Reyes-Bosque*, 596 F.3d 1017, 1027 n.3 (9th Cir. 2010). Here, all agree on the facts relevant for the standing issue, namely the circumstances surrounding the mailed package, such as that Lozano was not the addressee of the package. Lozano states that he would have argued that he was the real addressee of the package, *i.e.*, Bill Corner was his alias. But his entire defense was that the package was not his, *i.e.*, that Bill Corner was not his alias.

II

Turning to the merits, it is axiomatic that "to claim the protections of the Fourth Amendment, defendants must demonstrate that they had an expectation of privacy in the property searched and that their expectation was reasonable." *Reyes-*

*Bosque*, 596 F.3d at 1026 (internal citations omitted). "Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy." *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). Specifically, "[i]t has long been established that an *addressee* has both a possessory and a privacy interest in a mailed package." *United States v. Hernandez*, 313 F.3d 1206, 1209 (9th Cir. 2002) (emphasis added). Here, however, Lozano was not the addressee. The package was addressed to a Bill Corner.

Our circuit has not decided whether an individual has a legitimate expectation of privacy with respect to a package that is not addressed to him. In an unpublished, non-precedential decision, however, we held that a defendant did not have a legitimate expectation of privacy in a package addressed to a co-resident of his home. *United States v. Perez*, 64 F. App'x 635, 636 (9th Cir. 2003) (per curiam). But four other circuits have held, and one has stated in reasoned dicta, that an individual does not have a legitimate privacy expectation in a package that is not addressed to him. *United States v. Smith*, 39 F.3d 1143, 1145 (11th Cir. 1994); *United States v. Daniel*, 982 F.2d 146, 149 (5th Cir. 1993); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988); *United States v. Givens*, 733 F.2d 339, 341-42 (4th Cir. 1984); *see United States v. Lewis*, 738 F.2d 916, 920 & n.2 (8th Cir. 1984); *see also United States v. Pitts*, 322 F.3d 449, 460 (7th Cir. 2003) (Evans, J., concurring).[1] One other circuit has recognized but declined to decide the issue. *United States v. Robinson*, 390 F.3d 853, 870 n.24 (6th Cir. 2004).

---

[1]Several district courts also have so held. *United States v. DiMaggio*, 744 F. Supp. 43, 45 (N.D.N.Y. 1990); *United States v. Walker*, 20 F. Supp. 2d 971, 973-74 (S.D. W.Va. 1998); *United States v. Gonzalez*, 2003 WL 431636, *1 (E.D. Pa. Feb. 20, 2003).

A

I would follow the weight of authority, and hold that an individual does not have a legitimate expectation of privacy in a package not addressed to him. "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978). Nonaddressees cannot base their claim on either source of legitimation. An individual who is the intended recipient of mail has a property right to delivery. *Teal v. Felton*, 53 U.S. 284, 291 (1851). But a nonaddressee is not the intended recipient and, therefore, does not enjoy that right. Quite the contrary, a nonaddressee who acts based on such a professed right commits the federal crime of obstruction of correspondence. 18 U.S.C. § 1702.

Nor do societal understandings legitimize a nonaddressee's expectation of privacy. It is well-established that individuals do not have a legitimate expectation of privacy in items that are exposed to a third party. *E.g.*, *California v. Greenwood*, 486 U.S. 35, 40-41 (1980). The mail in which a nonaddressee claims a legitimate expectation of privacy is exposed to a third party, namely, the addressee. Relatedly, we have held that "exclusive use" of the object of a search "is crucial to Fourth Amendment standing." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 696 (9th Cir. 2009). A nonaddressee does not have any right to enjoy mail not addressed to him; it follows that he lacks the *exclusive* right to enjoy that mail.

A nonaddressee's expectation of privacy over mail not addressed to him is not rendered legitimate merely by his assertion of dominion when, as here, that assertion is made for wrongful reasons. In *Jacobsen*, for example, the Court observed that "a burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjec-

tive expectation of privacy, but it is not one which the law recognizes as legitimate." 466 U.S. at 123 n.22. Because the burglar's presence is "wrongful," his expectation of privacy is not "reasonable. *Id.* Similarly, a nonaddressee's claim of a criminal interest does not legitimize his expectation. *See Daniel*, 982 F.2d at 149; *Lewis*, 738 F.2d at 920 n.2 (stating that defendant's expectation of privacy in mailbox with false name for criminal purposes is "akin to that of the burglar plying his or her trade in a summer cabin during the off season").

Nor is a nonaddressee's expectation of privacy legitimated by the presence of his street address on the package, as is the case here with respect to the P.O. box rented by Lozano. "[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). Indeed, an individual does not have a legitimate expectation of privacy in all things that *enter* his P.O. box, *see United States v. Hinton*, 222 F.3d 664, 676 (9th Cir. 2000), let alone a legitimate expectation of privacy in all things merely *destined* for that box but that never make it there. I agree with our unpublished disposition, which explicitly rejected the claim that a nonaddressee has standing because he resided at the street address listed on the mail, *Perez*, 64 F. App'x at 636, and the three opinions that similarly have stated that a nonaddressee does not have standing despite his association with the street address listed on the package. *Pitts*, 322 F.3d at 460 (Evans, J., concurring); *Daniel*, 982 F.2d at 149*; Lewis*, 738 F.2d at 920 n.2.

B

Lozano argues that a nonaddressee has a reasonable expectation of privacy if the addressee is his alias. It is true that the Fifth Circuit in one line of cases has held that a defendant has a legitimate expectation of privacy in mail addressed to his "alter ego." *United States v. Richards*, 638 F.2d 756, 770 (5th Cir. 1981); *United States v. Villareal*, 963 F.2d 770, 774 (5th Cir. 1992). But that rule does not apply when, "[a]t trial,

[defendant]'s theory of defense was that [the defendant] and [the alias] were different persons." *Daniels*, 982 F.2d at 149. Here, Lozano's theory was that he was not the rightful recipient of the package. He denied that Bill Corner was his alias.

In addition, even if Lozano had claimed to be the rightful recipient, the Fifth Circuit line of cases involves defendants who had publicly-established connections to their alter ego. In *Richards*, for example, the defendant was the owner of the company that was the addressee. *Richards*, 638 F.2d at 770. The owner of a company, as its agent, can send and receive mail on its behalf under the law. It makes sense, therefore, that the owner would have a legitimate expectation of privacy in the company's mail. Similarly, in *Villareal*, the defendant went by the name listed on the package; at least one witness testified that he knew the defendant only by that name. *Villareal*, 963 F.2d at 775. Here, Bill Corner was not Lozano's publicly-established alias. Lozano cannot send and receive mail on Corner's behalf. Nor has Lozano ever been identified with Corner. Accordingly, it follows that he does not have a legitimate expectation of privacy in mail addressed to Corner even under *Richards* and *Villareal*.

In any event, these Fifth Circuit cases represent but one half of a intra- and intercircuit split regarding aliases, particularly criminal aliases. The better reasoned position is that of the Fifth Circuit in *Daniel*, the Eighth Circuit in *Lewis,* and Judge Evans's concurrence in the Seventh Circuit case of *Pitts*. In those cases, the judges doubted that a defendant had a legitimate expectation of privacy in mail addressed to his public alias when that alias was used solely in a criminal scheme. *Daniel*, 982 F.2d at 149; *Lewis*, 738 F.2d at 920 n.2; *Pitts*, 322 F.3d at 460 (Evans, J., concurring); *Walker*, 20 F. Supp. 2d at 973-74 (same). That conclusion better accords with the principle expressed by the Court in *Jacobsen* that "wrongful" interests do not give rise to legitimate expectations of privacy.

I would hold that a defendant does not have a legitimate expectation of privacy in a package not addressed to him, even if it listed his street address and even if the addressee was his criminal alias. Because the package in this case was not addressed to Lozano, and Bill Corner was at most Lozano's criminal alias, I would hold that Lozano did not have a legitimate expectation of privacy in the mailed package.

## III

Accordingly, I would affirm the denial of the motion to suppress based on lack of Fourth Amendment standing.