# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 1, 2022

Lyle W. Cayce
Clerk

No. 21-30068
Summary Calendar

---

United States of America,

*Plaintiff—Appellee*,

*versus*

Gilbert Lucas Martinez,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:19-CR-300-1

---

Before Davis, Jones, and Elrod, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*:

Gilbert Lucas Martinez appeals the district court's denial of his motion to suppress drugs found in two packages that were seized by the United States Postal Service ("USPS"). He argues that reasonable suspicion did not exist to detain the packages for further investigation. Martinez additionally asserts that even assuming reasonable suspicion existed to detain the packages, the 17-day delay between the detention of the packages and their search was unreasonable in violation of the Fourth Amendment.

No. 21-30068

Because, as set forth below, the district court did not err in denying Martinez's motion to suppress, we AFFIRM.

## I.

On March 12, 2019, United States Postal Inspector Gary Arias was contacted by a postal employee at the USPS facility in El Centro, California, regarding two suspicious packages. The postal employee informed Arias that: (1) the mailer paid the postage fees for the packages with cash; (2) the information on the shipping labels was handwritten; (3) the handwriting on the shipping labels for the two packages appeared identical, as though the same person filled out both shipping labels, yet the purported senders' names on the labels were different; (4) both packages were being sent to the same area, Shreveport, Louisiana, but to different addresses there; and (5) the man[1] paying the postage fees appeared to be anxious or nervous and did not engage the postal employee in conversation. Based on this information, Arias requested that the packages be forwarded to him at the San Diego field office for further investigation.

Two days later, on March 14, 2019, Arias received the packages. He examined the outside of the packages and observed that the size, shape, and appearance of the packages were consistent with USPS drug package profile characteristics.[2] He too observed (like the postal employee) that the handwriting on the shipping labels of the two packages appeared identical, yet the senders' names, as well as the recipients' names, on the labels were

---

[1] Arias indicated in his affidavit in support of search warrant that he was informed by the postal employee that one man presented the two packages for mailing; however, he later learned from surveillance video that the two packages were, in fact, mailed separately by two men, and the same postal employee had helped both men.

[2] *See United States v. Daniel*, 982 F.2d 146, 150 (5th Cir. 1993) (noting that USPS "drug package profile" is "a list of traits commonly encountered in the vast majority of illicit mailings of drugs") (citations omitted).

different. Utilizing the USPS database, Arias learned that someone with an Internet Protocol ("IP") address originating in Mexico was tracking both packages. Specifically, from the time the packages were intercepted, there were several attempts to track both packages from the same Mexican IP address. Through his experience and training, Arias knew that drug traffickers use the USPS because the tracking website allows them to search for their packages.

Arias also used a database to check the names and addresses written on the shipping labels of the two packages. Although the database was able to locate the addresses, it was unable to associate the names to those addresses. This information indicated to Arias that that the names provided on the labels did not receive mail at and were not otherwise associated with the addresses. From his experience, Arias knew that persons using the USPS system to ship controlled substances will enter false or fictitious sender names and/or sender addresses in order to avoid detection by law enforcement. They will also use recipient names not associated with the destination address.

On March 20, 2019, Arias contacted a border patrol officer to perform a canine sniff of the packages. Arias was unable to arrange for a canine examination prior to that date because he had to work on other cases, and he missed work due to illness. The dog alerted to both packages, indicating that the odor or aroma of one or more controlled substances emanated from the packages.

After the canine examination, Arias was again pulled away to work on other cases. He began drafting the affidavits in support of search warrants for the two packages on Friday, March 22, 2019. The following Monday, however, Arias had to take another sick day. When Arias returned to work the next day, he finished the search warrant applications and sent them on to the United States Attorney's Office for the Southern District of California. He obtained search warrants for the packages on March 28, 2019, and

No. 21-30068

searched the packages the next day. Arias discovered 2,222 grams of methamphetamine inside.

Martinez subsequently was identified as one of the individuals who mailed the packages at the USPS facility in El Centro. He later was indicted for conspiracy with intent to distribute and to possess with the intent to distribute methamphetamine. Martinez moved to suppress the packages and their contents, arguing that the packages were seized in violation of the Fourth Amendment. The magistrate judge (MJ) denied the motion, and the district court adopted the MJ's recommendation over Martinez's objections. Martinez subsequently entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. After receiving a sentence of 210 months of imprisonment and five years of supervised release, Martinez filed a timely notice of appeal.

## II.

Martinez argues that the district court erred in denying his motion to suppress because: (1) the postal employee did not have reasonable suspicion to detain the packages, (2) the 17-day delay between the detention of the packages and their search was unreasonable, and (3) the search warrants were invalid and insufficient to establish probable cause because they contained incorrect information.

As we noted in our recent decision in *United States v. Beard*, "[t]he protections of the Fourth Amendment extend to packages sent via the United States Postal Service."[3] Specifically, if the Government has reasonable suspicion that a package contains contraband or evidence of criminal activity,

---

[3] 16 F.4th 1115, 1119 (5th Cir. 2021) (citing *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970)).

a package may be detained without a warrant.[4] If the Government subsequently obtains a search warrant, the package may be searched.[5]

We have long recognized that certain traits are commonly encountered in the vast majority of illicit mailings of drugs (commonly referred to as "drug package profile" characteristics).[6] We have further held "that while any one of these factors standing alone might not provide reasonable suspicion, an aggregate of factors passes muster under the *Terry*[7] doctrine."[8]

In this case, the postal employee observed several drug package profile characteristics. Specifically, (1) the information on the shipping labels was handwritten, (2) the postage fees were paid in cash, allowing the sender to remain anonymous or avoid detection by law enforcement; (3) the Southern District of California is known as a source region for controlled substances; and (4) at least one of the men mailing a package appeared to be anxious or nervous. Finally, although the handwriting on the shipping labels for the two packages appeared identical, as though the same person filled out both shipping labels, the purported senders' names on the labels were different.

---

[4] *Id.*

[5] *Id.*

[6] *Daniel*, 982 F.2d at 150 (citing *United States v. Lux*, 905 F.2d 1379 (10th Cir. 1990)). In *Lux*, the court listed the following "drug package profile" characteristics: "(1) size and shape of the package; (2) package taped to close or seal all openings; (3) handwritten or printed labels; (4) unusual return name and address; (5) unusual odors coming from the package; (6) fictitious return address; and (7) destination of the package." 905 F.2d at 1380 n.1. Additional factors, as noted in Arias's affidavit in support of search warrant, include, inter alia, payment of postage fees in cash and mailing from a "narcotic source city."

[7] *Terry v. Ohio*, 392 U.S. 1 (1968).

[8] *Daniel*, 982 F.2d at 150 (citations omitted).

No. 21-30068

Based on this aggregate of factors, and contrary to Martinez's contentions, the postal employee had reasonable suspicion to detain the packages.

Martinez next argues that the 17-day delay between the detention of the package and its search constitutes an unreasonable, warrantless seizure in violation of the Fourth Amendment. He asserts that the delay "required a heightened finding of probable cause." In so asserting, Arias fails to acknowledge that probable cause actually was established on March 20, 2019, eight days after the packages were intercepted. In any event, we agree with the district court that the eight-day delay in establishing probable cause and the eight-day delay in obtaining search warrants were not unreasonable, as set forth below.

Although there is no bright-line rule regarding how long a package may be detained lawfully prior to obtaining a search warrant, the Supreme Court has noted that "detention of mail could at some point become an unreasonable seizure of 'papers' or 'effects' within the meaning of the Fourth Amendment."[9] In *Beard*, we noted that "the relevant factors to consider in determining reasonableness include: investigatory diligence, the length of the detention, and whether there were circumstances beyond the investigator's control."[10] We further noted that "these factors are always considered in the context of the specific facts of the case under review."[11]

Arias received the packages on March 14, 2019, two days after the postal employee intercepted them. He observed that the handwriting on the labels appeared identical, yet the senders' names and addresses were different. Arias could locate the senders' and recipients' addresses through

---

[9] *Van Leeuwen*, 397 U.S. at 252.

[10] 16 F.4th at 1119 (citations omitted).

[11] *Id.* at 1120.

his database research, but he was unable to associate the purported senders' and recipients' names with those addresses. Based on his experience, Arias knew that drug traffickers will enter false or fictitious sender and recipient names and/or addresses in order to avoid detection by law enforcement. He also learned from the USPS database that someone with a Mexican IP address attempted to track both packages after they were intercepted. Based on his experience, Arias also knew that drug traffickers use the USPS because the tracking website allows them to search for their packages.

On March 20, 2019, six days after he received the packages, Arias contacted a border patrol officer to perform a canine sniff of the packages. The dog alerted to both packages, indicating that he detected the odor or aroma of one or more controlled substances emanating from the packages. At that point, as the magistrate judge and district court determined, reasonable suspicion was elevated to probable cause to search the packages.[12]

The above facts establish that Arias was diligent in his investigation of the two packages after receiving them. Furthermore, we agree with the magistrate judge and district court that the eight-day delay in obtaining canine sniffs of the packages to establish probable cause was not unreasonable. It was undisputed that during those eight days, which included a weekend, Arias was required to work on other cases and missed work due to illness. Under these facts, the eight-day delay in obtaining probable cause to search the packages did not amount to an unreasonable seizure.

We next examine whether the additional eight-day delay between the establishment of probable cause and obtaining the search warrants was

---

[12] *See Florida v. Harris*, 568 U.S. 237, 247-48 (2013) (noting that, if the defendant has not contested that a dog performs reliably in detecting drugs, the court is permitted to find probable cause).

unreasonable.[13] Again, the factors this Court examines in determining reasonableness are investigatory diligence, the length of the detention, and whether there were circumstances beyond the investigator's control.[14]

After the canine alerted to the packages, and probable cause was established, Arias was again pulled away to work on other cases. He began drafting the affidavits on Friday, March 22, 2019, but had to take another sick day the following Monday. When Arias returned to work the next day, he finished the search warrant applications and sent them on to the United States Attorney's Office. He obtained search warrants for the packages on Thursday, March 28, 2019, and searched the packages the next day, March 29, 2019. Arias discovered 2,222 grams of methamphetamine inside.

Under these circumstances, we agree that the eight-day delay between the establishment of probable cause and obtaining the search warrants was reasonable. The above facts establish that Arias was diligent in drafting the applications for the search warrants after the canine alerted to the packages. It was undisputed that during those eight days, Arias was required to work on other cases, he took a sick day, and the delay included a weekend. Under these circumstances, the eight-day delay between the establishment of probable cause and obtaining the search warrants was reasonable. We conclude that the district court did not err in denying Martinez's motion to suppress.

---

[13] *See United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988) (rejecting proposition that after dog sniffs had established probable cause, "law enforcement officials may obtain search warrants for mailed packages at their leisure").

[14] *See Beard*, 16 F.4th at 1119. Although *Beard* involved the reasonableness of a detention based on reasonable suspicion, reasonableness of a detention based on probable cause centers on the same factors.

No. 21-30068

**III.**

Martinez lastly argues that the search warrants were invalid because they contained falsehoods that were material to establishing probable cause. Specifically, Martinez points out that in his affidavits for search warrants, Arias stated that a single person mailed the packages, paid the postage fees for both packages in cash, and the person appeared anxious or nervous; but the video surveillance and Arias's investigative report established, in fact, that two individuals mailed the packages. Martinez asserts that these false statements, "inserted either intentionally or with reckless disregard for the truth," invalidated the search warrants.

As the party attacking the warrant, Martinez had the burden of establishing by a preponderance of the evidence that the affiant's misrepresentations were made intentionally or with reckless disregard for the truth.[15] Furthermore, Martinez was required to demonstrate that without the falsehoods, there would not be sufficient information in the affidavit to support the issuance of the warrant.[16]

We agree with the magistrate judge and district court that Martinez failed to demonstrate either. Nothing in the record suggests that Arias's mistake was intentional or made with a reckless disregard for the truth, or to mislead the court. Furthermore, even if the incorrect statements were deleted, Arias's affidavits contained a plethora of other facts supporting probable cause, including the fact that the canine alerted to both packages, the senders' and recipients' names and addresses had no association, and an individual with a Mexican IP address attempted to search for the packages.

---

[15] *See United States v. Alvarez*, 127 F.3d 372, 373–74 (5th Cir. 1997).

[16] *See United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000).

Therefore, Martinez's argument that the search warrants were invalid is meritless.

## IV.

Based on the foregoing, the district court did not err in denying Martinez's motion to suppress drugs found in two packages that were seized by the USPS. Accordingly, we AFFIRM his conviction and sentence.