# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2023

Lyle W. Cayce
Clerk

No. 21-51229

United States of America,

*Plaintiff—Appellee*,

*versus*

Hae Yeong Song,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CR-63-1

_____

Before Jones, Clement, and Haynes, *Circuit Judges*.

Per Curiam:[*]

The Government charged Hae Yeong Song with receipt and possession of child pornography after investigative agents found an illicit image on Song's cellphone during an investigation into an unrelated incident. Song subsequently moved to suppress the child pornography evidence, asserting that the agents violated his Fourth Amendment rights when they seized and searched his cellphone. The district court denied Song's motion

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-51229

and found him guilty after a bench trial.  Song appealed.  For the reasons set forth below, we AFFIRM.

## I.  Factual Background

When he was a soldier in the United States Army, Song was accused of sexually assaulting another soldier, "PFC Kim," and recording videos of the assault on his cellphone.  PFC Kim reported the incident to Army investigative agents.  She also stated that, days after the alleged assault, Song messaged her on the "Kakao Talk" app, sent her one of the video recordings, and told her he would use it as blackmail if she refused to have sex with him again.  PFC Kim permitted the agents to review her cellphone, where they found a video associated with the incident.

After receiving PFC Kim's report and the video, Special Agent Andrew Cerean began an investigation.  He first arranged a standard interview with Song at an Army field office.  Before the interview, Agent Cerean attempted to contact the on-duty military magistrate judge and a second military magistrate judge to obtain a search and seizure authorization for Song's cellphone.[1]  Despite several attempts to reach them, however, Agent Cerean did not receive a response.  Song later arrived at the office for the interview, where he was instructed to follow the standard practice of placing his belongings in a locker, which he did.

The interview began casually, and Song was generally responsive.  He confirmed that he knew PFC Kim and that she had visited him.  However, when Agent Cerean began questioning Song about his visit with PFC Kim, Song ceased responding and requested a lawyer.  Based on PFC Kim's report, the video from her phone, and his conversation with Song, Agent

---

[1] A "search and seizure authorization" is another term for a "warrant" in the military context.  *See* MIL. R. EVID. 315(a), (d)

Cerean determined he had probable cause that (1) Song had sexually assaulted PFC Kim and (2) evidence of that assault would be on Song's cellphone. Accordingly, when the interview ended, Agent Cerean declined to return Song's cellphone.

Before Agent Cerean was able to seek a search and seizure authorization, his commanding officer ordered him to give his attention to a different matter. Three days later, Agent Cerean submitted an affidavit detailing the results of his investigation, and a magistrate judge issued a search and seizure authorization for Song's cellphone. The authorization permitted a search of "any contacts; call logs; texts; SMS; MMS: videos; images; call & Application Data, including contents from the 'Kakao Talk' application; as well as any deleted messages, content & application data between" Song and PFC Kim related to the sexual assault investigation.

A different agent, Agent Jeffrey Cunningham, conducted the search. In his initial review, he was unable to find a particular video related to the sexual assault. So, he broadened his review. During this search, he stumbled upon an image of child pornography. He immediately ceased his review and obtained a second search authorization. During the search conducted pursuant to that second authorization, Agent Cunningham discovered extensive images and videos of child pornography.

The Government subsequently charged Song with receipt and possession of child pornography involving a prepubescent minor, in violation of 18 U.S.C. § 2252A(a)(2) and § 2252A(a)(5)(B), respectively. Song moved to suppress the initial image, and all evidence stemming from that image, as fruit of the poisonous tree. He urged that Agent Cerean's initial seizure of his cellphone and Agent Cunningham's subsequent search violated his Fourth Amendment rights. After two evidentiary hearings, the district court

denied Song's suppression motion.  Song proceeded to a bench trial, in which the district court found him guilty.  After sentencing, Song timely appealed.

## II.    Standard of Review

Our review of a district court's denial of a suppression motion is two-fold: we review conclusions of law de novo and factual findings for clear error. *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014).  "[T]he clearly erroneous standard is particularly strong" where, as here, the district court heard oral testimony and "had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (quotation omitted).  Accordingly, under that standard, we defer to the district court's factual findings unless we are left with "a definite and firm conviction that a mistake has been committed." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010).  Importantly, we view the evidence "in the light most favorable to the prevailing party," here, the Government.  *Gibbs*, 421 F.3d at 357.

## III.    Discussion

The district court concluded that neither the seizure nor the subsequent search violated Song's Fourth Amendment rights.  Therefore, suppression of the child pornography evidence was not warranted.  As discussed below, we agree.

### A. Seizure

We begin with Agent Cerean's seizure of Song's cellphone.  Song makes two main challenges.  First, he urges that Agent Cerean violated the Fourth Amendment's protection against unreasonable seizures when he confiscated Song's cellphone without a warrant.  While seizures generally must be conducted pursuant to a warrant, *see United States v. Place*, 462 U.S. 696, 701 (1983), there are exceptions.  For instance, "the exigencies of the

situation [may] make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (second alteration in original) (internal quotation marks and citation omitted). Accordingly, under this "exigent circumstances exception," an agent does not need a warrant to seize property if he has (1) probable cause to believe that a suspect might destroy evidence, and (2) exigent circumstances demand it. *See Illinois v. McArthur*, 531 U.S. 326, 330–31 (2001); *Place*, 462 U.S. at 701.

Here, the Government urges that its warrantless seizure of Song's cellphone was justified by exigent circumstances. We agree. First, there is no real debate that Agent Cerean had probable cause that Song's cellphone contained evidence of a sexual assault. PFC Kim's report, the video on her cellphone, and Song's interview provided ample basis for that conclusion, and Song's counsel agreed as much at oral argument. That requirement is easily satisfied.

Second, we are also satisfied with the district court's determination that exigent circumstances existed. At the conclusion of the interview, Song was aware that he was under investigation for sexual assault. *See United States v. Mata*, 517 F.3d 279, 287 (5th Cir. 2008). Therefore, it was reasonable for Agent Cerean to believe that Song would remove evidence from his phone, which could be readily deleted. *See id; see also United States v. Diaz*, 435 F. App'x 329, 332 (5th Cir. 2011) (per curiam) (concluding that the warrantless seizure of a computer was justified under the exigent circumstances exception because the "digital images" it contained were "easily destructible"). That observation is bolstered here by the fact that Agent Cerean did not place Song under arrest at the conclusion of the interview. So, it was reasonable for Agent Cerean to assume that Song would have had the opportunity to delete incriminating evidence, had Agent Cerean

not kept the cellphone.  All of these factors weigh in favor of exigency.  *See Mata*, 517 F.3d at 287.

Song challenges the application of the exception because he says that, if any "exigency" existed, it was "manufactured" by Agent Cerean.  We disagree.  It's true that an agent who deliberately "creates" exigent circumstances cannot later claim the benefit of the exception.  *King*, 563 U.S. at 462, 471–72.  But, under guiding Supreme Court precedent, an agent "creates" an exigency only when he "engag[es] or threaten[s] to engage in conduct that violates the Fourth Amendment."  *Id.* at 462, 469.

Here, Agent Cerean's pre-warrant conduct plainly did not violate, or threaten to violate, the Fourth Amendment.  Song fails to cite to anything about the lead-up to the interview or the interview itself that would cause us to pause.[2]  There's no indication, for example, that Agent Cerean unlawfully required him to appear for the interview; unconstitutionally coerced Song to bring his cellphone to the Army office; or violated Song's rights by requesting that Song place his belongings in a locker.  Rather, Song concedes that such a request is "routinely done."  Moreover, the Supreme Court has expressly rejected the notion that an agent "manufactures" exigency if he conducts an interview without a seizure authorization.[3]  *See id.* at 458, 466–67 (rejecting lower court tests that considered whether an officer could have obtained a search warrant prior to the development of the exigent circumstances).

_____

[2] In fact, his counsel conceded at oral argument that nothing about the interview violated the Fourth Amendment.

[3] The Court observed that "[f]aulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution."  *Id.* at 467.  It therefore concluded that those tests were "unsound" and would "unjustifiably interfere[] with legitimate law enforcement strategies."  *Id.* at 464, 466.

No. 21-51229

Thus, for all these reasons, we conclude the exigent circumstances exception justified the warrantless seizure.

We now turn to Song's second challenge, which involves Agent Cerean's post-seizure conduct. Song asserts that it was constitutionally unreasonable for Agent Cerean to wait three days to obtain a warrant after seizing Song's cellphone. Therefore, suppression was warranted. While a delay could possibly become unreasonable, Song has no authority that the brief delay at issue here was unreasonable, particularly since Agent Cerean had a more pressing emergency in the few intervening days. *See United States v. Martinez*, 25 F.4th 303, 308–09 (5th Cir. 2022); *see also United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009) (noting that delay may be reasonable where "some overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case"); *accord United States v. Stabile*, 633 F.3d 219, 236 (3d Cir. 2011) ("[S]uch overriding circumstances were present because [the agent] was assigned to what was obviously important security work."). In any event, "police imperfection is not enough to warrant reversal," particularly when a delay is relatively brief. *United States v. Burgard*, 675 F.3d 1029, 1034 (7th Cir. 2012).

We therefore conclude that Agent Cerean did not unreasonably interfere with Song's possessory interests, and the three-day delay did not amount to a Fourth Amendment violation.[4]

---

[4] We recognize that Song undoubtedly has a possessory interest in his cellphone, which likely holds personal and confidential information. *See Riley v. California*, 573 U.S. 373, 393–94 (2014). But Agent Cerean's overall diligence simply outweighs that possessory interest.

No. 21-51229

### B.  Search

Song next asserts that suppression was warranted because Agent Cunningham violated the Fourth Amendment's protection against unreasonable searches.  Song advances two challenges.

First, Song contends that Agent Cunningham impermissibly exceeded the scope of the search authorization.  We disagree.  As we have noted, "Fourth Amendment reasonableness is the bedrock principle that guides computer as well as physical searches." *United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012).  With a physical search, an officer executing a search warrant may look anywhere evidence described in the warrant might conceivably be located.  *United States v. Ross*, 456 U.S. 798, 820–21 (1982).  Similarly, in the digital context, a "search may be as extensive as reasonably required to locate the items described in the warrant based on probable cause." *Triplett*, 684 F.3d at 505 (quotation omitted).

Here, the purpose of the search authorization was to locate conversations and media related to the alleged sexual assault;[5] and Agent Cunningham "followed a reasonable protocol toward that end," starting narrowly and expanding only as needed to find responsive data.  *See id.*

There's no indication that Agent Cunningham freely roamed through all the contents of Song's cellphone, as Song protests.  He did need to broaden his search at some point.  But that was not unreasonable.  Rather, as we have advised, agents "should limit [their] exposure to innocent files"; but "in the end, there may be no practical substitute for actually looking in many

---

[5] Recall that the search authorization permitted Agent Cunningham to examine Song's cellphone for "texts; SMS; MMS; videos; images; call [and] [a]pplication data" from the Kakao Talk App, "as well any deleted messages, content, and [a]pplication data between" Song and PFC Kim "related to the alleged" sexual assault.

(perhaps all) folders and sometimes at the documents contained within those folders." *Id.* at 506 (internal quotation marks and citation omitted). Because Agent Cunningham, "followed a reasonable protocol toward" locating the "items described in the warrant," we conclude that he did not "violate[] the Fourth Amendment in a way requiring suppression."[6] *Id.* at 505–06.

We now turn to Song's second challenge, which asserts that the search authorization was impermissibly broad. We again disagree. It's true that an overly broad warrant may violate the Fourth Amendment, and therefore, warrant suppression. *See United States v. Sanjar*, 876 F.3d 725, 735 (5th Cir. 2017). But a warrant is sufficiently tailored—and therefore, not overbroad—when (1) it "provide[s] sufficient notice" of the particular areas an agent may search, and (2) "probable cause exist[s] to justify listing" those areas as being subject to search. *See id.* at 735–36. The search authorization here satisfied both requirements.

First, the authorization provided specific notice of the types of data (i.e., areas) Agent Cunningham could search: SMS, MMS, videos, images, calls, and application data *related to the sexual assault*. Even if that authorization was "somewhat generic," it nevertheless "provided sufficient notice of what items" Agent Cunningham could view. *See id.* at 736; *Triplett*, 684 F.3d at 504–05. Song concedes as much, recognizing that "the warrant restricted" Agent Cunningham "to discrete and limited categories of information on Song's phone."

---

[6] We also find unpersuasive Song's argument that Agent Cunningham should have ceased his investigation after locating *some* of the relevant videos. "[L]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause." *King*, 563 U.S. at 467 (quotation omitted).

No. 21-51229

Second, as discussed above, there's no debate that the agents had probable cause to believe that Song's cellphone contained videos, images, and conversation related to the alleged sexual assault. The authorization here constrained Agent Cunningham's search to only content related to the incident. Accordingly, we conclude the authorization was not overly broad, and suppression was not warranted.

## IV.    Conclusion

For all these reasons, we AFFIRM.